UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19 CR 26 RLW (ACL) |
| | ) |
| DONALD SANDERS, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).  Pending before the undersigned are Defendant Donald Sanders' Motion to Dismiss Count II for Vindictive Prosecution (Doc. 49) and Motion to Dismiss the Indictment for Selective Prosecution (Doc. 50), as well as a Motion for Severance (Doc. 51).  The original Indictment charged Sanders and his brother, Marty Luke, with being previously convicted felons in possession of eight firearms between January 7 and 19, 2019.  A Superseding Indictment was later returned, adding a second count against Sanders for tampering with a witness by threat or intimidation for conduct occurring on February 9, 2019.

First, Sanders argues that the Government superseded the original single count Indictment "merely because [he] is asserting his right to trial" and the prosecutor "wants to see [him] do life in prison..."  (Doc. 49 at 3.)  As such, Sanders claims Count II should be dismissed for vindictive prosecution.

With regard to his allegation of selective prosecution, Sanders claims that there were three previously convicted felons involved in the possession of the eight firearms between

January 7 and 19, 2019. Sanders relayed that the uncharged person is a woman. He believes the only difference between her and the two men charged in the Indictment is gender. Sanders argues "therefore [the Government] purposely discriminated against him based upon his gender" and both counts should be dismissed for "selective prosecution." (Doc. 50 at 2.)

The Government filed responses opposing the Motions to Dismiss. As to the allegation of vindictive prosecution for seeking a Superseding Indictment, the Government explained that the day after the return of the original Indictment it learned Sanders allegedly threatened a witness in the case. (Doc. 61 at 8; Doc. 61-1.) Upon receiving that information, the Government decided to seek a Superseding Indictment. That decision was made before Sanders was arrested and appeared in this Court.

In response to Sanders' selective prosecution argument, the Government responded that the decision to charge the two men was based on accumulated evidence over a period of a week that supported Sanders and Luke were involved in multiple burglaries and that they unlawfully possessed firearms. (Doc. 62 at 7.) Upon reviewing all of the information that had been gathered, the Government concluded there was sufficient evidence to charge Luke and Sanders, but there was not enough evidence to prove the woman possessed the firearms. *Id*. In addition, the woman cooperated during the investigation and promised her continued cooperation which was "a fact relevant to the Government's charging decision." *Id*.

Following an evidentiary hearing, Sanders submitted written replies to the Government's responses. (Docs. 73, 74.)

In consideration of the evidence and legal arguments submitted by the parties, the undersigned recommends that the following findings of fact and conclusions of law be adopted, and that the Motions to Dismiss for Vindictive and Selective Prosecution be denied.

In light of the Government's announcement that it joins Sanders' request for his trial to be severed from co-defendant, Marty Luke, it is recommended that the Motion to Sever (Doc. 51) be granted.  The Motions to Dismiss will be addressed below.

**I.  Findings of Fact**

On February 12, 2019, Donald Sanders and Marty Luke were indicted for being previously convicted felons in possession of eight firearms between January 7 and 19, 2019.  The next day, the prosecutor handling the case, Assistant U.S. Attorney (AUSA) Keith Sorrell, received an email from Butler County Sheriff Deputy Wesley Popp about Sanders.  Deputy Popp explained that Sanders asked a third party to send a threatening message to a witness in the case during video visitation.  (Doc. 61-1.)  A copy of the video and a supplemental report were included in the email for AUSA Sorrell's review.  On February 14, 2019, AUSA Sorrell advised Deputy Popp that he intended to file a Superseding Indictment "on Sanders for making that threat,…" *Id.*  The Superseding Indictment was returned less than eight weeks later, adding a second count against Sanders for tampering with a witness by threat or intimidation for conduct that occurred on February 9, 2019.  Sanders' initial appearance on the Indictment occurred in this Court on February 20, 2019.

Count I alleges that Luke and Sanders were previously convicted felons in possession of firearms between January 7 and 19, 2019.  The Government described the evidence that has been gathered to support that charge, including the details surrounding four residential burglaries in Butler County and what the AUSA characterized as an attempted robbery of a fifth residence.  (Docs. 61 and 62 at 3-7.)  The Court's summary of that evidence follows:

On January 7, 2019, Scott Butler reported a burglary of one firearm[1] and other property from his residence. The burglary of Harrell Rice's home on January 9, 2019, resulted in a report that two firearms[2] and other property had been stolen. On January 14, 2019, James and Debra Clark reported that three pistols,[3] a purple suitcase, and other personal property had been stolen from their home. On the same day, Misty Dodson also reported her home had been burglarized; she reported that a pistol[4] and three rifles[5] had been stolen. Video surveillance showed that a white Ford Ranger truck had travelled near the Clark home close to the time it was burglarized. The video also showed that a passenger was dropped off near the Clark's home, waited a while, and then picked up a male pedestrian returning from the direction of the Clark's home.

Officers believe that Sanders attempted a robbery of Erica Tomlinson's residence on January 11, 2019. Since Tomlinson was home and told Sanders the person he was looking for did not live at the residence, Sanders departed in a white Ford Ranger truck.

Following the burglaries of the Clark and Dodson homes on January 14, 2019, Luke and Sanders were observed at a convenience store in Butler County. Luke made a purchase, exited the store, and entered a white Ford Ranger truck. Sanders, on the other hand, stole cartons of cigarettes from the store; his actions were captured on one of the store's security cameras. Sanders fled from the store when confronted by an employee.

---

[1]  A Smith & Wesson, 9 mm caliber pistol (serial number LFF6332).
[2]  An Anderson, AR-15 rifle (serial number 18061676) and an H&R, .32 caliber handgun.
[3]  A Taurus, .45 caliber pistol (serial number CP782187), a High Standard, .22 caliber pistol, and another pistol.
[4]  A High Point, 9 mm caliber pistol.
[5]  A Ruger, .22 caliber rifle (serial number 355-70576), 30-.06 rifle, and .243 caliber rifle.

Page **4** of **10**

Quick investigative work resulted in the white Ford Ranger truck being located in the parking lot of a Super 8 Motel in Poplar Bluff.  Surveillance officers observed Luke and Sanders get in the truck later that same day.  When officers attempted to stop the truck, Luke sped away and ultimately drove the truck off the highway.  Both Luke and Sanders ran from the truck and were captured after a short foot chase.  Before the truck stopped, either Luke or Sanders threw the Ruger rifle stolen from Dodson's residence out of one of the truck windows.  When Sanders stopped running from the officers, he pulled stolen jewelry from his pockets and threw it on the ground.

A search of the truck resulted in the seizure of the two additional rifles reportedly stolen from Dodson, the 30-.06 and .243 caliber rifles; a stolen High Standard pistol; a black crowbar known as a common burglary tool; as well as jewelry and other items that had been reported stolen.

The officers then returned to the Super 8 Motel to confirm where Sanders and Luke had been staying.  They learned a woman, Rebecca Golden, had rented the room and the officers made contact with her.  Golden admitted that she paid for the room.  Golden also stated that she, along with Sanders and Luke, had been staying in the room.  Golden consented to a search of the room and the officers secured a search warrant for the room. Officers found the 9 mm caliber pistol that was stolen from Scott Butler on January 7, 2019 in the motel room safe.  They also found numerous items of personal property that had been reportedly stolen from the Butler, Rice, Clark, and Dodson residences.  Video surveillance from the Super 8 Motel showed that Sanders and Luke had unloaded various items from the white Ford Ranger truck into the motel room, including the purple suitcase stolen from the Clark's on January 14, 2019.

Golden was interviewed. She admitted that Sanders had given her some of the jewelry that had been stolen on January 14, 2019, but denied being involved in the burglaries.

## II. Conclusions of Law

Sanders requests that the Indictment be dismissed under two separate legal theories. First, Sanders claims that the Government engaged in selective prosecution when he and his brother were indicted, but a female was not. His next claim is that seeking a Superseding Indictment with the threat charge was a vindictive act by the prosecutor in response to Sanders' exercising his right to trial. Sanders also complains that the Government attorney wants to insure that he goes to prison for life. The Government presented information contrary to Sanders' arguments.

### II.A. Selective Prosecution

The United States Supreme Court has held that "[i]n our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 608 (1985), citing *United States v. Goodwin,* 457 U.S. 368, 380, n. 11 (1982); accord, *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 248 (1980). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978). The *Wayte* Court added:

> This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the

> Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.
>
> As we have noted in a slightly different context, however, although prosecutorial discretion is broad, it is not "'unfettered.' Selectivity in the enforcement of criminal laws is ... subject to constitutional constraints." *United States v. Batchelder,* 442 U.S. 114, 125, [ ] (1979) (footnote omitted).  In particular, the decision to prosecute may not be "'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,'" *Bordenkircher v. Hayes, supra,* 434 U.S., at 364, [ ], quoting *Oyler v. Boles,* 368 U.S. 448, [ ] (1962), including the exercise of protected statutory and constitutional rights, see *United States v. Goodwin, supra,* 457 U.S., at 372, [ ].

*Wayte v. United States*, 470 U.S. at 607–08.

In *United States v. Jacobs*, the Eighth Circuit noted, "the mere allegation of selective prosecution, however, does not require discovery or an evidentiary hearing."  781 F.2d 643, 646–47 (8th Cir. 1986), citing *United States v. Catlett,* 584 F.2d 864, 865 (8th Cir. 1978).  To be entitled to a hearing "[t]he defendant must first make a preliminary or threshold showing of the essential elements of the selective prosecution defense."  *Id.,* citing *United States v. Berrios,* 501 F.2d 1207, 1211-12 (2d Cir.1974).  "A hearing is necessitated only when the motion alleges sufficient facts [in support of the selective prosecution claim] to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose."  *Jacobs*, 781 F.2d at 647 (citations omitted, alteration in *Jacobs*).

To establish the essential elements of a *prima facie* case of selective prosecution in the Eighth Circuit, a defendant must demonstrate that: (1) he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted; and (2) the government's discriminatory selection of him for prosecution was based upon an impermissible ground, such as race, religion or [the] exercise of [the] first amendment right to free speech. *United States v. Jacobs*, 781 F.2d 643, 646 (8th Cir. 1986), citing *United States v. Catlett,* 584 F.2d 864, 866 (8th Cir.1978) (citations omitted).  The Eighth Circuit affirmed this two-part test for selective prosecution in *United States v. Eklund,* 733 F.2d 1287, 1289-91 (8th Cir.1984) (banc).  *Accord Wayte,* 470 U.S. at 608 & n. 10.

In consideration of the record before the Court, the undersigned finds that Sanders has not been singled out for prosecution.  Sanders and his brother were similarly situated and both were charged with being previously convicted felons in possession of firearms. Sanders' allegation that he was prosecuted based on his gender finds no support in the record.  The investigation of the case provided ample evidence for the Government to pursue charges against Sanders and Luke.  The involvement of Golden was cursory.  While she was in the hotel room where one firearm was found, that firearm was in the safe and there is no evidence that Golden had any knowledge of the firearm.  Furthermore, she agreed to cooperate with the Government.  On this record, it cannot be said that the Government engaged in selective prosecution when it chose not to indict Golden.  Consequently, Sanders' Motion to Dismiss for Selective Prosecution should be denied.

**II.B.   Vindictive Prosecution**

In *United States v. Leathers*, the Eighth Circuit explained that vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right. 354 F.3d 955, 961 (8th Cir.2004). A vindictive prosecution equates to a violation of due process. *Id.* The defendant has the burden to demonstrate that the "prosecution was brought in order to punish [him] for the exercise of a legal right," and because of the broad discretion given to prosecutors in performing their duties, the defendant's burden to show vindictive prosecution is "a heavy one." *Id.*

In *United States v. Williams* the Eighth Circuit stated:

> A defendant can establish prosecutorial vindictiveness through two methods; first, with "objective evidence of the prosecutor's vindictive or improper motive in increasing the number or severity of charges." *United States v. Chappell,* 779 F.3d 872, 879 (8th Cir.2015) (internal quotation omitted). "Absent such evidence, a defendant may, in *rare* instances, rely upon a presumption of vindictiveness, if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists." *Id.* (alteration in original) (internal quotation omitted). In determining whether the presumption of vindictiveness applies we examine "the prosecutor's actions in the context of the entire proceedings." *Id.* at 880 (quotation omitted).

793 F.3d 957, 963 (8th Cir. 2015).

Sanders argues that when the Government filed the two-count Superseding Indictment it sought to punish him for exercising his legal right to a trial following the Government's rejection of Sanders' attempt to cooperate. He further argues that the prosecutor "wants to see [him] do life in prison." (Doc. 49 at 3.) The record of the case does not support these claims. The Government decided to supersede the Indictment *before* Sanders was even arrested on the original Indictment. The Government attorney agreed that he is seeking the maximum sentence available under the statutes for Sanders' alleged criminal conduct. In the AUSA's assessment, in light of Sanders' long history of criminal activity dating back to

1975, the maximum penalty available could include life in prison if Sanders is found to be an Armed Career Criminal. Even so, that objective does not amount to a vindictive prosecution.

Ultimately, Sanders' argument boils down to a claim that the addition of the second count was vindictive. The time-line related to the AUSA's charging decisions simply does not support that allegation. The decision to supersede the Indictment was based on new alleged criminal conduct by Sanders that occurred *before* Sanders appeared in this Court. The AUSA learned of that information on February 12, 2019; made a decision to supersede on February 14, 2019; and Sanders was arrested and had his initial appearance on February 20, 2019. As such, his Motion to Dismiss for Vindictive Prosecution should be denied.

### III.  Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motions to Dismiss for Vindictive Prosecution (Doc. 49) and Selective Prosecution (Doc. 50) be **denied**.

**IT IS FURTHER RECOMMENDED** that upon the Government's consent, the Motion to Sever (Doc. 51) be **granted**.

Further, the parties are advised that they have fourteen days, or not later than July 31, 2019, within which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of July, 2019.