UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19 CR 26 SRC (ACL) |
| ) | |
| DONALD SANDERS, ) | |
| ) | |
| Defendant. ) | |

## AMENDED REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). A Report and Recommendation (Doc. 79) addressing Defendant Donald Sanders' Motion to Dismiss Count II for Vindictive Prosecution (Doc. 49) and Motion to Dismiss the Indictment for Selective Prosecution (Doc. 50), as well as a Motion for Severance (Doc. 51) was filed on July 17, 2019. This Amended Report and Recommendation includes those findings and addresses Sanders' Motion for Disclosure of Grand Jury Transcripts (Doc. 106), as well as his *pro se* Motion to Dismiss Count II and Motion to Sever Count I from Count II (Doc. 120).

The original Indictment charged Sanders and his brother, Marty Luke, with being previously convicted felons in possession of eight firearms between January 7 and 19, 2019. A Superseding Indictment[1] was later returned, adding a second count against Sanders for tampering with a witness by threat or intimidation for conduct occurring on February 9, 2019.

---

[1] A Second Superseding Indictment (Doc. 92) is now pending against Sanders and does not change the analysis of the issues raised.

Page **1** of **20**

First, Sanders argues that the Government superseded the original single count Indictment "merely because [he] is asserting his right to trial" and the prosecutor "wants to see [him] do life in prison..." (Doc. 49 at p. 3.)  As such, Sanders claims that Count II should be dismissed for vindictive prosecution.

With regard to his allegation of selective prosecution, Sanders claims that there were three previously convicted felons involved in the possession of the eight firearms between January 7 and 19, 2019.  Sanders relayed that the uncharged person is a woman.  He believes the only difference between her and the two men charged in the Indictment is gender.  Sanders argues "therefore [the Government] purposely discriminated against him based upon his gender" and both counts should be dismissed for "selective prosecution."  (Doc. 50 at p. 2.)

The Government filed responses opposing the Motions to Dismiss.  As to the allegation of vindictive prosecution for seeking a Superseding Indictment, the Government explained that the day after the return of the original Indictment it learned Sanders allegedly threatened a witness in the case.  (Doc. 61 at p. 8; Doc. 61-1.)  Upon receiving that information, the Government decided to seek a Superseding Indictment.  That decision was made before Sanders was arrested and appeared in this Court.

In response to Sanders' selective prosecution argument, the Government responded that the decision to charge the two men was based on accumulated evidence over a period of a week that supported Sanders and Luke were involved in multiple burglaries and that they unlawfully possessed firearms.  (Doc. 62 at p. 7.)  Upon reviewing the information that had been gathered, the Government concluded there was enough evidence to charge Luke and Sanders, but there was not enough evidence to prove the woman possessed the firearms.  *Id*.

In addition, the woman cooperated during the investigation and promised her continued cooperation which was "a fact relevant to the Government's charging decision." *Id*.

Following an evidentiary hearing, Sanders submitted written replies to the Government's responses.  (Docs. 73, 74.)

Later, Sanders filed a Motion for Disclosure of Grand Jury Transcripts (Doc. 106) through counsel and a *pro se* Motion to Dismiss Count II and Motion to Sever Count I from Count II (Doc. 120).  The Government opposed each of these Motions.  (Docs. 111 and 121.)

In consideration of the evidence and legal arguments submitted by the parties, the undersigned recommends that the following findings of fact and conclusions of law be adopted; and that all of Sanders' Motions be denied except for the Motion to Sever (Doc. 51) defendants as the Government joined Sanders' request for his trial to be severed from co-defendant, Marty Luke.

### I.  Findings of Fact

On February 12, 2019, Donald Sanders and Marty Luke were indicted for being previously convicted felons in possession of eight firearms between January 7 and 19, 2019.  The next day (February 13, 2019), the prosecutor handling the case, Assistant U.S. Attorney (AUSA) Keith Sorrell, received an email from Butler County Sheriff Deputy Wesley Popp about Sanders.  Deputy Popp explained that during video visitation, Sanders asked a third party to send a threatening message to a witness in the case.  (Doc. 61-1.)  A copy of the video and a supplemental report were included in the email for AUSA Sorrell's review.  On February 14, 2019, AUSA Sorrell advised Deputy Popp that he intended to file a Superseding Indictment "on Sanders for making that threat,…" *Id*.  The Superseding Indictment was returned less than eight weeks later, adding a second count against Sanders

Page **3** of **20**

for tampering with a witness by threat or intimidation for conduct that occurred on February 9, 2019.  Sanders' initial appearance on the Indictment occurred in this Court on February 20, 2019.

Count I alleges that Luke and Sanders were previously convicted felons in possession of firearms between January 7 and 19, 2019.  The Government described the evidence that has been gathered to support that charge, including the details surrounding four residential burglaries in Butler County and what the AUSA characterized as an attempted robbery of a fifth residence.  (Docs. 61 and 62 at 3-7.)  The Court's summary of that evidence follows:

On January 7, 2019, Scott Butler reported a burglary of one firearm[2] and other property from his residence.  The burglary of Harrell Rice's home on January 9, 2019, resulted in a report that two firearms[3] and other property had been stolen.  On January 14, 2019, James and Debra Clark reported that three pistols,[4] a purple suitcase, and other personal property had been stolen from their home.  On the same day, Misty Dodson also reported her home had been burglarized; she reported that a pistol[5] and three rifles[6] had been stolen.  Video surveillance showed that a white Ford Ranger truck had travelled near the Clark home close to the time it was burglarized.  The video also showed that a passenger was dropped off near the Clark's home, waited a while, and then picked up a male pedestrian returning from the direction of the Clark's home.

---

[2]  A Smith & Wesson, 9 mm caliber pistol (serial number LFF6332).
[3]  An Anderson, AR-15 rifle (serial number 18061676) and an H&R, .32 caliber handgun.
[4]  A Taurus, .45 caliber pistol (serial number CP782187), a High Standard, .22 caliber pistol, and another pistol.
[5]  A High Point, 9 mm caliber pistol.
[6]  A Ruger, .22 caliber rifle (serial number 355-70576), 30-.06 rifle, and .243 caliber rifle.

Officers believe that Sanders attempted a robbery of Erica Tomlinson's residence on January 11, 2019.  Since Tomlinson was home and told Sanders the person he was looking for did not live at the residence, Sanders departed in a white Ford Ranger truck.

Following the burglaries of the Clark and Dodson homes on January 14, 2019, Luke and Sanders were observed at a convenience store in Butler County.  Luke made a purchase, exited the store, and entered a white Ford Ranger truck.  Sanders, on the other hand, stole cartons of cigarettes from the store; his actions were captured on one of the store's security cameras.  Sanders fled from the store when confronted by an employee.

Quick investigative work resulted in the white Ford Ranger truck being located in the parking lot of a Super 8 Motel in Poplar Bluff.  Surveillance officers observed Luke and Sanders get in the truck later that same day.  When officers attempted to stop the truck, Luke sped away and ultimately drove the truck off the highway.  Both Luke and Sanders ran from the truck and were captured after a short foot chase.  Before the truck stopped, either Luke or Sanders threw the Ruger rifle stolen from Dodson's residence out of one of the truck windows.  When Sanders stopped running from the officers, he pulled stolen jewelry from his pockets and threw it on the ground.

A search of the truck resulted in the seizure of the two additional rifles reportedly stolen from Dodson, the 30-.06 and .243 caliber rifles; a stolen High Standard pistol; a black crowbar known as a common burglary tool; as well as jewelry and other items that had been reported stolen.

The officers then returned to the Super 8 Motel to confirm where Sanders and Luke had been staying.  They learned a woman, Rebecca Golden, had rented the room and the officers made contact with her.  Golden admitted that she paid for the room.  Golden also

stated that she, along with Sanders and Luke, had been staying in the room.  Golden consented to a search of the room and the officers secured a search warrant for the room.  Officers found the 9 mm caliber pistol that was stolen from Scott Butler on January 7, 2019 in the motel room safe.  They also found numerous items of personal property that had been reportedly stolen from the Butler, Rice, Clark, and Dodson residences.  Video surveillance from the Super 8 Motel showed that Sanders and Luke had unloaded various items from the white Ford Ranger truck into the motel room, including the purple suitcase stolen from the Clark's on January 14, 2019.

Golden was interviewed.  She admitted that Sanders had given her some of the jewelry that had been stolen on January 14, 2019, but denied being involved in the burglaries.

## II.  Conclusions of Law

Sanders initially requested that the Indictment be dismissed under several different legal theories.  First, Sanders claimed that the Government engaged in selective prosecution when he and his brother were indicted, but a female was not.  His next claim was that seeking a Superseding Indictment with the threat charge was a vindictive act by the AUSA in response to Sanders' exercise of his right to trial.  Sanders also complained that the Government attorney wants to ensure that he goes to prison for life.  The Government presented information contrary to Sanders' arguments.

Later, Sanders filed a *pro se* Motion to Dismiss Count II of the Indictment and requested that the trial of Count I be severed from Count II.  (Doc. 120.)  His attorney filed a separate Motion for Disclosure of the Grand Jury Transcripts in his case "to discover whether [the AUSA] made inflammatory comments against Defendant to the Grand Jury that would

lead to a dismissal of this case." (Doc. 106 at p. 2.) Within the *pro se* Motion, Sanders asserted additional non-discernable claims.

An analysis of Sanders' claims is set out below.

## II.A.  Selective Prosecution

The United States Supreme Court has held that "[i]n our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 608 (1985), citing *United States v. Goodwin,* 457 U.S. 368, 380, n. 11 (1982); accord, *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 248 (1980). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978). The *Wayte* Court added:

> This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.
>
> As we have noted in a slightly different context, however, although prosecutorial discretion is broad, it is not "'unfettered.' Selectivity in the enforcement of criminal laws is ... subject to constitutional constraints." *United States v. Batchelder,* 442 U.S. 114, 125, [ ] (1979) (footnote omitted).  In

particular, the decision to prosecute may not be "'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,'" *Bordenkircher v. Hayes, supra,* 434 U.S., at 364, [ ], quoting *Oyler v. Boles,* 368 U.S. 448, [ ] (1962), including the exercise of protected statutory and constitutional rights, see *United States v. Goodwin, supra,* 457 U.S., at 372, [ ].

470 U.S. at 607–08.

In *United States v. Jacobs*, the Eighth Circuit noted, "the mere allegation of selective prosecution, however, does not require discovery or an evidentiary hearing." 781 F.2d 643, 646–47 (8th Cir. 1986), citing *United States v. Catlett,* 584 F.2d 864, 865 (8th Cir. 1978). To be entitled to a hearing "[t]he defendant must first make a preliminary or threshold showing of the essential elements of the selective prosecution defense." *Id.,* citing *United States v. Berrios,* 501 F.2d 1207, 1211-12 (2d Cir.1974). "A hearing is necessitated only when the motion alleges sufficient facts [in support of the selective prosecution claim] to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose." *Jacobs*, 781 F.2d at 647 (citations omitted, alteration in *Jacobs*).

To establish the essential elements of a *prima facie* case of selective prosecution in the Eighth Circuit, a defendant must demonstrate that: (1) he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted; and (2) the government's discriminatory selection of him for prosecution was based upon an impermissible ground, such as race, religion or [the] exercise of [the] first amendment right to free speech. *United States v. Jacobs*, 781 F.2d 643, 646 (8th Cir. 1986), citing *United States v. Catlett,* 584 F.2d 864, 866 (8th Cir.1978) (citations omitted). The Eighth Circuit affirmed this two-part test for selective prosecution in

*United States v. Eklund,* 733 F.2d 1287, 1289-91 (8th Cir.1984) (banc). *Accord Wayte,* 470 U.S. at 608 & n. 10.

In consideration of the record before the Court, the undersigned finds that Sanders has not been singled out for prosecution. Sanders and his brother were similarly situated and both were charged with being previously convicted felons in possession of firearms. Sanders' allegation that he was prosecuted based on his gender finds no support in the record. The investigation of the case provided ample evidence for the Government to pursue charges against Sanders and Luke. The involvement of Golden was cursory. While she was in the hotel room where one firearm was found, that firearm was in the safe and there is no evidence that Golden had any knowledge of the firearm. Furthermore, she agreed to cooperate with the Government. On this record, it cannot be said that the Government engaged in selective prosecution when it chose not to indict Golden. Consequently, Sanders' Motion to Dismiss for Selective Prosecution should be denied.

**II.B.   Vindictive Prosecution**

In *United States v. Leathers*, the Eighth Circuit explained that vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right. 354 F.3d 955, 961 (8th Cir.2004). A vindictive prosecution equates to a violation of due process. *Id.* The defendant has the burden to demonstrate that the "prosecution was brought in order to punish [him] for the exercise of a legal right," and because of the broad discretion given to prosecutors in performing their duties, the defendant's burden to show vindictive prosecution is "a heavy one." *Id.*

In *United States v. Williams* the Eighth Circuit stated:

> A defendant can establish prosecutorial vindictiveness through two methods; first, with "objective evidence of the prosecutor's vindictive or improper motive in increasing the number or severity of charges." *United States v. Chappell,* 779 F.3d 872, 879 (8th Cir.2015) (internal quotation omitted). "Absent such evidence, a defendant may, in *rare* instances, rely upon a presumption of vindictiveness, if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists." *Id.* (alteration in original) (internal quotation omitted). In determining whether the presumption of vindictiveness applies we examine "the prosecutor's actions in the context of the entire proceedings." *Id.* at 880 (quotation omitted).

793 F.3d 957, 963 (8th Cir. 2015).

Sanders argues that when the Government filed the two-count Superseding Indictment it sought to punish him for exercising his legal right to a trial following the Government's rejection of Sanders' attempt to cooperate.  He further argues that the prosecutor "wants to see [him] do life in prison."  (Doc. 49 at 3.)  The record of the case does not support these claims.  The Government decided to supersede the Indictment *before* Sanders was even arrested on the original Indictment.  The Government attorney agreed that he is seeking the maximum sentence available under the statutes for Sanders' alleged criminal conduct.  In the AUSA's assessment, in light of Sanders' long history of criminal activity dating back to 1975, the maximum penalty available could include life in prison if Sanders is found to be an Armed Career Criminal.  Even so, that objective does not amount to a vindictive prosecution.

Ultimately, Sanders' argument boils down to a claim that the addition of the second count was vindictive.  The time-line related to the AUSA's charging decisions simply does not support that allegation.  The decision to supersede the Indictment was based on new alleged criminal conduct by Sanders that occurred *before* Sanders appeared in this Court.  The AUSA learned of that information on February 12, 2019; made a decision to supersede

on February 14, 2019; and Sanders was arrested and had his initial appearance on February 20, 2019.  As such, his Motion to Dismiss for Vindictive Prosecution should be denied.

## II.C.  *Pro Se* Motion to Dismiss Count II

First, Sanders' *pro se* Motion fails to set forth with particularity any factual details to support his claim that Count II, Tampering with a Witness by Intimidation or Threat, should be dismissed.  Sanders' Motion is further cast in conclusory or conjectural terms which make it virtually impossible to correctly address his claims.  Consequently, it would be reasonable for the undersigned to refuse to consider the *pro se* Motion.  In fact, "[a] district court has no obligation to entertain *pro se* motions filed by a represented party." *Abdullah v. United States*, 240 F.3d 683, 686 (8th Cir. 2001).  Even so, the undersigned will endeavor to interpret and examine Sanders' *pro se* Motion.

## II.C.1.  Claim there is no federal jurisdiction for Count II

If Sanders' request for dismissal is based on a claim that there is no federal jurisdiction for Count II of the Indictment, his argument fails.   Sanders' first theory to support the request for dismissal is that the Government attorney "failed to keep investigation and prosecution within appropriate federal bounds," or, in the alternative, "the executive branch fail[ed] in th[e] duty to limit federal jurisdiction."  Sanders requests that "under these circumstances it is appropriate and necessary" for this Court "to intervene and dismiss [this] federal prosecution as an abuse of federal power." *See* Doc. 120 at pp. 1-2.  The Court interprets Sanders statements as a jurisdictional challenge, based on a theory that the conduct charged in Count II is outside of this Court's jurisdiction.

Federal courts have jurisdiction over felon in possession of firearms and ammunition cases based on the interstate commerce nexus.  This is satisfied upon a mere showing that the

firearm or ammunition that was possessed previously travelled in interstate commerce. *United States v. Schmidt*, 571 F.3d 743, 746-47 (8th Cir. 2009). Count II charges that Sanders:

> Did knowingly attempt to intimidate and threaten R.G. by stating to Jason Teeters to tell R.G. that "Black River is very cold right now" when the defendant and Teeters were discussing the fact that R.G. was a witness against the defendant with regard to the conduct charged against the defendant in Count I, with the intent to cause or induce R.G. to withhold testimony in an official proceeding, to wit: the investigation of Donald Sanders for the conduct set forth in Count I…

(Doc. 92 at p. 2.) The attempted use of intimidation and threats with intent to cause or induce any person to withhold testimony from an official proceeding is a violation of 18 U.S.C. § 1512. If proven during trial, the conduct alleged in Count II describes actions that a jury could find to be in violation of the statute. Consequently, no abuse of power can be found for the Government's prosecution of violations of 18 U.S.C. §§ 922(g) and 1512.

Sanders' request for the dismissal of Count II based on a claim that there is no federal jurisdiction for Count II of the Indictment should be denied.

**II.C.2.  Violation of First and Sixth Amendment rights**

Sanders claims that the filing of the Indictment violated his right to free speech under the First Amendment, as well as his Sixth Amendment right to confront witnesses. Again, without detailing the factual circumstances to support his claims, it is extremely difficult to engage in a meaningful analysis.

Like the Government (Doc. 121 at pp. 7-10), the undersigned interprets Sanders' complaint regarding a violation of the First Amendment to be a suggestion that his free speech rights enable him to make threats against others. That is not the law in this country.

"The First Amendment does not protect a true threat, 'a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another.'" *Riehm v. Engelking*, 538 F.3d 952, 963 (8th Cir. 2008) (citing *Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002) (en banc)). If Sanders did in fact ask Teeters to tell R.G. that "Black River is very cold right now" in order to dissuade R.G. from acting as a witness against Sanders, that statement would be considered a true threat and such speech is not protected. Consequently, Sanders' request for dismissal based on a First Amendment violation should be denied although he will have the opportunity to raise the issue again during the trial.

With regard to Sanders' complaint that his "Sixth Amendment rights unabled [sic] to confront an witness/victim and due to that an judge not an jury should decide that," the Court can only surmise as the Government concluded (Doc. 121 at pp. 10-12) that Sanders is complaining about not being represented during the Grand Jury proceedings when witnesses testified against him. A defendant does not enjoy the protections of the Sixth Amendment until proceedings have been instituted against him. *United States v. Mandujano*, 425 U.S. 564, 581 (1976). *See also Fuller v. Johnson*, 158 F.3d 903, 907-08 (5th Cir 1998) ("Because Fuller had not been indicted at the time of his grand jury testimony, his Sixth Amendment right to counsel had not attached and therefore could not have been violated."). Furthermore, "[t]he grand jury proceeding is not an adversary hearing or 'mini-trial' at which the defendant is entitled to present his own version of the facts." *United States v. Lame*, 716 F.2d 515, 518 (8th Cir. 1983) (citing *United States v. Calandra*, 414 U.S. 338, 359 (1974).

Sanders' request for the dismissal based on alleged violations of his First and Sixth Amendment rights should be denied.

### II.C.3. Motion to Sever felon in possession count from witness tampering count

The caption of Sanders' *pro se* Motion to Dismiss includes the phrase "Motion to Sever Count I from Count 2." That being said, Sanders does not make any statement, cite to any legal authority, or set out any facts that would require a severance of the two charges for trial.

As stated by the Government, under Rule 8(a), an indictment may charge a defendant with two or more offenses if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed.R.Crim.P. 8(a).

The Eighth Circuit rejected a defendant's claim for severance of a witness tampering charge from a drug conspiracy charge in *United States v. Colhoff*:

> Witness tampering is "factually interrelated" with the proceeding in which the Defendant attempted to interfere. Joinder of a tampering or obstruction charge with an underlying substantive offense is proper, because the former is "connected to, and interrelated with" the latter…
>
> The evidentiary overlap between the conspiracy charges and the witness-tampering charge further demonstrates the interrelatedness of the charges. Evidence of Colhoff's attempted tampering would have been admissible in a stand-alone conspiracy trial as an act in furtherance of the conspiracy to show the existence of an agreement. At least some evidence of the drug conspiracy would be admissible to show motive in a stand-alone prosecution for attempting to intimidate [the witness] to prevent his testimony in [the] trial. Because evidence pertaining to both charges likely would have been admissible in separate trials, Colhoff cannot show a reasonable probability that joinder affected the outcome of the proceedings.

833 F.3d 980, 983-84 (8th Cir. 2016) (citations omitted). Sanders' case is similar to *Colhoff* in that the alleged witness tampering offense is related to the felon in possession charge. If

R.G. had not agreed to be a witness against Sanders for the felon in possession offense, he would not have attempted to threaten R.G.  Joinder of Count I and Count II in a single trial is proper under these facts.

Sanders' request for severance of Count I from Count II should be denied.

### II.C.4.  Sanders' Misc. *Pro Se* Statements

Sanders' Motion included a statement that "[t]he outrageous government conduct defense remains alive in the Second Circuit."  While the Eighth Circuit recognizes the defense, it is often rejected as the conduct must "shock the conscience of the court."  *United States v. Jacobson*, 916 F.2d 467, 469 (8th Cir. 1990).  The Eighth Circuit has observed that "Government conduct which is 'so outrageous and shocking that it exceed[s] the bounds of fundamental fairness,' may violate the Due Process clause and bar a subsequent prosecution."  *United States v. Hunt*, 171 F.3d 1192, 1195 (8th Cir. 1999) (quoting *United States v. Johnson*, 767 F.2d 1259, 1275 (8th Cir. 1985) and citing *United States v. Russell*, 411 U.S. 423, 431-32 (1973)).

If the purpose of Sanders' statement is to raise the defense of outrageous government conduct, the trial judge will consider that request.  In the event Sanders did not intend to raise a trial defense, the undersigned will consider the statement as a request for dismissal of the Indictment based on a due process violation for outrageous government conduct.  As argued by the Government, Sanders did not allege "any pre-indictment involvement by the officers that assisted in the commission of his crime" nor did he identify "<u>any</u> Government involvement in his crimes."  (Doc. 121 at p. 7; emphasis in original.)  The instant "Findings of Fact" do not describe any actions by the Government that would support it played any role in the crimes charged against Sanders.  As such, Sanders has failed to assert the necessary

information for this Court to dismiss the Indictment on a theory of outrageous government conduct. *See United States v. Hunt*, 171 F.3d 1192, 1195 (8th Cir. 1999).  Sanders' request for dismissal based on outrageous government conduct should be denied.

Additionally, Sanders stated, "The Defendant claims: clear innocent has been abused. Defendant don't have to present a defense, have no burden.  The burden is entirely on the prosecution." (Doc. 120 at p. 2.)  It is unclear what if any argument or theory for dismissal Sanders is attempting to engage with these statements.  Certainly, it will be the Government's burden to prove his guilt at trial and Sanders cannot be compelled to testify, or to present any evidence.

Lastly, Sanders made a *pro se* request for an evidentiary hearing.  As there are no facts alleged in support of the conclusory and conjectural statements contained in his Motion, there is no need for an evidentiary hearing.  The request for a hearing is denied.

## II.D.  Motion to Disclose Grand Jury Transcripts

Sanders filed a Motion for Disclosure of the Grand Jury Transcripts in his case "to discover whether [the AUSA] made inflammatory comments against Defendant to the Grand Jury that would lead to a dismissal of this case." (Doc. 106 at p. 2).  Sanders claims:

> Given the allegations against [the AUSA] for being vindictive and selective in prosecuting Mr. Sanders, it is necessary to see the Grand Jury transcripts to discover whether [the AUSA] made inflammatory comments against Defendant to the Grand Jury that would lead to a dismissal of this case. [The AUSA] through his response has all but admitted that he may have said those things to people not associated with the case.  It is unknown whether he made inflammatory comments to the Grand Jury but it cannot be disregarded based upon [the AUSA's] response.

*Id*.

The Government responded that although "Sanders is not entitled to discovery of the entire grand jury proceedings as a pretrial matter, he will be entitled to receive grand jury material for witnesses who testify at trial and who have already testified before the grand jury." (Doc. 111 at p. 6.)  That material will be provided to Sanders a few days before trial.  *Id.*

"Unlike an ordinary judicial inquiry, where publicity is the rule, grand jury proceedings are secret." *Levine v. United States*, 362 U.S. 610, 617 (1960).  "To make public any part of its proceedings would inevitably detract from its efficacy." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959).  There are limited exceptions to this long-established policy of secrecy.  *Id.*; Fed.R.Crim.P. 6(e).

If a witness testifies at trial, any testimony by that witness before the grand jury constitutes a statement required to be produced at the time of trial pursuant to the Jencks Act, 18 U.S.C. §3500, upon appropriate request, insofar as it relates to the subject matter of the witness' trial testimony.  Generally, production of grand jury statements cannot be compelled prior to the witness' testimony at trial.  *See Dennis v. United States*, 384 U.S. 855, 875 (1966); *United States v. Harflinger*, 436 F.2d 928, 935 (8th Cir. 1970); *United States v. Bruton*, 647 F.2d 818, 824 (8th Cir. 1981); 18 U.S.C. 3500(b) and e(3).

Rule 6(e) permits a court to authorize disclosure of grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." *See* Fed.R.Crim.P. 6(e)(3)(E)(ii).  "Courts have expressed the balance between the policy of secrecy which is to be afforded grand jury proceedings and the limited exceptions in which disclosure may be made by recognizing that the party moving for disclosure must establish a 'particularized need.'" *Thomas v. United*

Page **17** of **20**

*States*, 597 F.2d 656, 657 (1979); *United States v. McDougal*, 559 F.3d 937, 840-41 (8th Cir. 2009) (citing *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983)).

"[T]o demonstrate a particularized need, a defendant must show that the request for disclosure is:  (1) required to avoid possible injustice in a different judicial proceeding, (2) greater than the need for continued secrecy, and (3) specifically directed at the material required."  *McDougal*, 559 F.3d at 841 (citing *In re Grand Jury Proceedings Relative to Perl*, 838 F.2d 304, 306 (8th Cir. 1988)).

> A criminal defendant must point to specific evidence of prosecutorial overreach-
> ing in order to show particularized need to consult grand jury transcripts.  A
> defendant who "has not pointed to anything in the record which might suggest
> that the prosecution engaged in improper conduct before the grand jury" has
> not carried his burden of persuasion.

*United States v. Lame*, 716 F.2d 515, 518 (8th Cir. 1983) (quoting *United States v. Edelson*, 581 F.2d 1290, 1291 (7th Cir. 1978)).

Whether to permit disclosure of grand jury proceedings is a matter within the trial court's discretion.  *Pittsburgh Plate Glass*, 360 U.S. at 400.  "A grand jury transcript should not be disclosed for a fishing expedition looking for irregularities in grand jury proceedings."  *United States v. Kocher*, 978 F.2d 1264 (Table) (8th Cir. 1992) (unpublished) (citing *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980)).

The wording of Sanders' request for disclosure is telling.  He stated:

> it is necessary to see the Grand Jury transcripts to *discover* whether [the
> Government attorney] made inflammatory comments against Defendant
> to the Grand Jury that would lead to a dismissal of this case.

(Doc. 106 at p. 2; emphasis added.)  This request does not demonstrate that disclosure of the transcript is: (1) necessary to avoid possible injustice in a different judicial proceeding, (2)

greater than the need for continued secrecy, and (3) specifically directed at the material required.  Sanders complains that the Government attorney openly expressed his plan to pursue the greatest sentence against him that is available under the law.

It is true that the Government attorney openly stated the intent to seek the maximum sentence available based on the fact Sanders' criminal history dates "back to 1975" along with "his willingness to break the law, sometimes violently."  (Doc. 61 at p. 10.)  Having considered the Government's commitment to that endeavor, this Court found that the Government did not engage in vindictive prosecution of the Defendant.  The Government's intent to seek the maximum punishment available does not enable this Court to make the leap suggested by Sanders that the Government attorney may have made inflammatory comments during the Grand Jury proceedings.  "Such 'fishing expeditions' do not provide sufficient grounds for disclosure prior to or at trial."  *Thomas*, 597 F.2d at 658 (Citations omitted).

The Government indicated that if a Grand Jury witness testifies at trial, it will disclose the witness' Grand Jury testimony a few days before trial which meets the requirements of Fed.R.Crim.P. 26.2.

Because Sanders relies upon a rejected basis to dismiss and offers no other particularized reason to review the transcript, his Motion for Disclosure of Grand Jury Transcripts should be denied.

### III.  Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motions to Dismiss for Vindictive Prosecution (Doc. 49) and Selective Prosecution (Doc. 50); Motion for Disclosure of Grand

Jury Transcripts (Doc. 106); and *pro se* Motion to Dismiss Count II and Motion to Sever Count I from Count II (Doc. 120) be **denied**.

**IT IS FURTHER RECOMMENDED** that upon the Government's consent, the Motion to Sever (Doc. 51) the Defendants for trial be **granted**.

Further, the parties are advised that they have fourteen days, or not later than March 18, 2020, within which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of March, 2020.