UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:19-cr-00026-SRC |
| | ) | |
| DONALD SANDERS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court on Defendant Donald Sanders's pretrial motions. Sanders and his brother, Defendant Marty Luke, were charged in a one-count Indictment [Doc. 1] returned by a grand jury on February 12, 2019, for being previously convicted felons in possession of firearms in violation of 18 U.S.C. § 922(g)(l).   The grand jury later returned a Superseding Indictment [Doc. 37] adding a second count against Sanders for tampering with a witness by threat or intimidation in violation of 18 U.S.C. § 1512(b)(2)(A).   The grand jury returned a Second Superseding Indictment [Doc. 92] on October 8, 2019, but it does not impact the Court's findings on any of the issues raised in Sanders's pretrial motions.

The Court referred all pretrial motions to United States Magistrate Judge Abbie Crites-Leoni pursuant to 28 U.S.C. § 636(b).   Sanders filed a Motion to Dismiss Count II for Vindictive Prosecution [Doc. 49], a Motion to Dismiss the Indictment for Selective Prosecution [Doc. 50], a Motion for Severance [Doc. 51], a Motion for Disclosure of Grand Jury Transcripts [Doc. 106], and a *pro se* Motion to Dismiss Count II and Motion to Sever Count I from Count II [Doc. 120].   On May 24, 2019, Judge Crites-Leoni held an evidentiary hearing on the Motion to

1

Dismiss Count II for Vindictive Prosecution [Doc. 49], the Motion to Dismiss the Indictment for Selective Prosecution [Doc. 50], and the Motion for Severance [Doc. 51].   Doc. 68.

Judge Crites-Leoni filed a Report and Recommendation [Doc. 79] on July 17, 2019 addressing the motions that were subject of the May 24, 2019 evidentiary hearing.   Judge Crites-Leoni filed an Amended Report and Recommendation [Doc. 125] on March 4, 2020 that includes the findings of the July 17, 2019 Recommendation [Doc. 79], as well as her findings on the Motion for Disclosure of Grand Jury Transcripts [Doc. 106] and the *pro se* Motion to Dismiss Count II and Motion to Sever Count I from Count II [Doc. 120].

In the Amended Recommendation [Doc. 125], Judge Crites-Leoni recommends that Sanders's Motion to Dismiss Count II for Vindictive Prosecution [Doc. 49], Motion to Dismiss the Indictment for Selective Prosecution [Doc. 50], Motion for Disclosure of Grand Jury Transcripts [Doc. 106], and the *pro se* Motion to Dismiss Count II and Motion to Sever Count I from Count II [Doc. 120] be denied.   She further recommends, based upon the United States' written consent [Doc. 63], that the Motion for Severance [Doc. 51] be granted.   Sanders filed written objections to the Amended Recommendation [Doc. 135] and the United States filed a written response to Sanders's objections [Doc. 139].

When a party objects to a Magistrate Judge's report and recommendation, the District Judge must conduct a de novo review of the portions of the report, findings, or recommendations to which the party objected.   28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)).   In making its de novo determination of the objected-to portions, findings, or recommendations in the Amended Recommendation, the Court has reviewed the

entire record, including the audio recording of the May 24, 2019 evidentiary hearing and all exhibits.   Counsel stipulated that on de novo review, the undersigned could review a video recording of a jailhouse conversation between Sanders and another person relating to both Count II of the Superseding Indictment and certain of Sanders's Motions.   *See* Doc. 148.   The Court also reviewed that video.

To support his Objections, Sanders raises new arguments and proffers new evidence. Doc. 135. The United States does not object to the new arguments or additional evidence at this stage, and requests that the Court decide on the merits all of Sanders's claims.   Doc. 139 at p. 2. The Court accordingly has considered the new arguments and proffers new evidence.

## I.    Objections to findings of fact

Sanders objects to five specific findings of fact in the Amended Recommendation.   Doc. 135 at pp. 1-3.   Sanders then "asserts that these factual inaccuracies affect the outcome of the legal analysis made by the Court[,]" but offers no further argument or analysis.   Doc. 135 at p. 3.   The United States argues that "while there were some mis-statements [sic] in the factual statements" in the Amended Recommendation, those misstatements resulted from Sanders's failure to submit any testimony, exhibits, or other evidence at the evidentiary hearing or otherwise before the Magistrate Judge filed her Amended Recommendation.   Doc. 139 at pp. 3-4.   The Prosecution then argues, "there were no errors in the factual findings that affected the [Magistrate Judge's] analysis of the issues."   *Id*. at 4.   The Court addresses Sanders's five objections in turn.

1.    Sanders's first objection states:

On page 5, paragraph 1, the Court found that "Officers believe that Sanders attempted a robbery of Erica Tomlinson's residence on January 11, 2019. Since Tomlinson was home and told Sanders the person he was looking for did not

3

live in the residence, Sanders departed in a white Ford Ranger truck."
Defendant objects to this finding of fact. As grounds, defendant states:

     a.      In fact, Erica Tomlinson had observed the white Ford Ranger at her residence along with a male subject that matched the description of Marty Luke. She identified Marty Luke in a photo line-up. See Exhibit A, paragraph 3.

Doc. 135 at p. 1.

     The United States "concede[s] that the factual statement in the Amended Report and Recommendation is not the representation of the facts offered by the Government."   Doc. 139 at p. 5.   The Prosecution argues that Sanders fails to connect this "mis-statement" with any recommendation in the Amended Recommendation.   *Id.* at 6.   The Court acknowledges for the record the factual inaccuracies Sanders notes,[1] and the Court finds, on de novo review, that the inaccuracies do not affect the Court's determination on any of Sanders's motions now before the Court.

    2.     Sanders's second objection states:

On page 5, paragraph 2, the Court found that "following the burglaries of the Clark and Dodson homes on January 14, 2019, Luke and Sanders were observed at a convenience store in Butler County." Defendant objects to this finding of fact.   As grounds, defendant states:

     a.      In fact, on December 8, 2018, officers were dispatched to Heartland Express, the convenience store, to investigate the stealing of some cigarettes as is referenced in Exhibits B1-B2. Sanders was picked out of a lineup on January 22, 2019, as referenced in Exhibit C.

     b.      On January 14, 2019, the officers actually obtained the surveillance video from the convenience store. The surveillance video was from the December 8, 2018 stealing of cigarettes incident. Exhibit D, paragraph I.

---

[1] The Court notes that in claiming factual inaccuracies exist in the Amended Recommendation, Sanders relies on exhibits he submitted with his Objections, and any inaccuracies in the Amended Recommendation resulted from Sanders's not presenting evidence to Judge Crites-Leoni.

       c.      The two men were not seen together at the convenience store on the day of the burglaries. They were seen at the convenience store together over one month prior to the burglaries.

Doc. 135 at pp. 1-2.

The United States again concedes that Sanders's "claims as to the dates that the events occurred are correct, but again, are not relevant for the purposes of deciding whether the Prosecution was vindictively or selectively prosecuting Sanders. The underlying investigation of the December 8, 2018 theft case had nothing to do with the prosecutor's motive for charging Sanders."   Doc. 139 at p. 6.   The Court acknowledges for the record the factual inaccuracies Sanders notes, and the Court finds, on de novo review, that the inaccuracies do not affect the Court's determination on any of Sanders's motions now before the Court.

    3.      Sanders's third objection states:

On Page 5, paragraph 3, the Court found that "before the truck stopped, either Luke or Sanders threw the Ruger rifle stolen from the Dodson's residence out of the truck windows." Defendant objects to this finding of fact. As grounds, defendant states:

       a.      In the police reports provided to the defendant, Officer Derek House wrote "As Inv. B. Lowe pursued the white Ford Ranger driven by M. Luke I observed M. Luke to throw several items from the driver's side window of the vehicle as he was fleeing.  One of the items, later identified as a .22 caliber long rifle was thrown from the drivers side window of the vehicle..." Exhibit E, paragraph 3.

       b.      The evidence will show that Marty Luke threw the Ruger rifle from the truck window.

Doc. 135 at p. 2.

The United States responds that it did not know who threw the rifle and argued before the Magistrate Judge that "someone threw a rifle out of the truck."   Doc. 61 at p. 5; Doc. 139 at p. 7. The Court acknowledges that Exhibit E, paragraph 3, submitted by Sanders with his objections, does contain a police report stating "I observed M. Luke throw several items from the driver's

side window of the vehicle . . . One of the items, later identified as a .22 caliber long rifle was thrown from the drivers [sic] side window of the vehicle."   Doc. 135-1 at p. 6.   The Court finds that no factual inaccuracies on this point exist, as the Amended Recommendation states that "either Luke or Sanders threw the Ruger rifle . . ."   The Court further finds, on de novo review, that who threw the items does not affect the Court's determination on any of Sanders's motions now before the Court.

> 4.      Sanders's fourth objection states:
>
> On Page 5, paragraph 4, the Court found that "A search of the truck resulted in the seizure of the two additional rifles reportedly stolen from Dodson the, 30-.06 and .243 caliber rifles." Defendant objects to this finding of fact. As grounds, defendant states:
>
> > a.      On January 12, 2019, Investigator Kellis Thompson executed the search warrant on the white Ford Ranger Truck. In a soft-sided red bag found behind the drivers seat, the officer found a Taurus (Judge) pistol, a Hi-Point C9 pistol, a Hi Point Sentinel R 106 pistol, and a High standard Model 103 pistol. Exhibit F1 and F2.
> >
> > b.      No rifles were found in the truck.
> >
> > c.      There were four pistols found in the truck and all of them were not in plain view.
> >
> > d.      All the pistols were in a bag behind the driver's seat.

Doc. 135 at pp. 2-3.

The United States concedes that "no rifles were actually found in the truck."   Doc. 139 at p. 7.   The Court acknowledges for the record the factual inaccuracies Sanders notes, and the Court finds, on de novo review, that the inaccuracies do not affect the Court's determination on any of Sanders's motions now before the Court.

5.      Sanders's fifth objection states:

On page 6, paragraph 1 the Court found that they "also found numerous items of personal property that has [sic] been reportedly stolen." Defendant objects to omission in the Court's findings of fact.   As grounds, Sanders states:

> a.      The court fails to mention the Armscar 22 lr ammo box of 50 rounds that was found in plain view on the nightstand in the hotel room in which Rebecca Golden was found. Exhibit G.

Doc. 135 at p. 3.

The United States apparently concedes the omission of the ammunition, stating only that the objection "has no bearing on whether the Government decided to prosecute Sanders due to a discriminatory reason."   Doc. 139 at p. 7.   The Court acknowledges the omission Sanders notes, and the Court finds, on de novo review, that the omission does not affect the Court's determination on any of Sanders's motions now before the Court.

Having reviewed the entire record de novo, the Court adopts the Findings of Fact set forth in the Amended Recommendation, other than the factual inaccuracies that Sanders notes in his Objections, as the Court acknowledges above.   Further, as noted above, the Court finds that these factual inaccuracies do not affect the Court's determination on any of Sanders's motions now before the Court.

## II.    Motion to dismiss the indictment for selective prosecution

Sanders objects to the Amended Recommendation's conclusion that his Motion to Dismiss the Indictment for Selective Prosecution [Doc. 50] should be denied.   Specifically, Sanders objects to the Amended Recommendation's finding on page 9, paragraph 1, that states "[he] and his brother were similarly situated . . . (and) the involvement of Golden was cursory. While she was in the hotel room where one firearm was found, that firearm was found in the safe

and there is no evidence that Golden had knowledge of the firearm."   Doc. 135 at pp. 4-5.   As

grounds for his objection, Sanders states:

   a.   Golden was found in the hotel room where the stolen goods were
        located. Golden was found in the hotel room with ammunition sitting in
        plain view on the nightstand. Exhibit G. The gun was found in a locked
        safe. Golden is a convicted felon and on probation. Golden had stolen
        items in the motel room and in her purse.

   b.   Sanders was found in a truck where stolen goods were located. Sanders
        was a passenger in a truck where guns were found in a sealed bag not in
        plain view of a passenger. Sanders is a convicted felon. Sanders had
        stolen goods in his pocket. There is no evidence that Sanders knew of
        the presence of the guns.

   c.   Marty Luke operated the white Ford Ranger. Marty Luke was identified
        at the scene. Marty Luke is seen carrying the rifle, alone, in the motel
        surveillance. Marty Luke threw the rifle out of the window. The guns
        were in a sealed bag behind the driver seat.

   d.   No witness will place either Golden or Sanders at the burglary. Both
        will be found with Marty Luke after the burglaries.

   e.   If Golden is found to be cursory, then so should Sanders be found to be
        cursory.

   f.   Sanders and his brother Luke were not similarly situated.

   g.   Sanders and Golden are similarly situated individuals.

   h.   Golden is female while Sanders is male.

   i.   The Government engaged in selective prosecution when it chose not to
        indict Golden.

*Id.* at pp. 4-5.

   The United States claims that its decision to prosecute Sanders and Luke was based on

the belief that it had enough evidence available at the time of the original Indictment to convict

both Sanders and Luke of illegally possessing firearms, but not enough evidence to convict

Golden.   Doc. 139 at pp. 10-14.   The United States argues that the mere presence of

ammunition in a room with a convicted felon does not necessarily prove beyond a reasonable doubt that the convicted felon had intentions of controlling the ammunition.  *Id.* at p. 11.   The United States further argues that (a) it has not made any agreement not to prosecute Golden, (b) it lacks proof that Golden intended to control the movements of the ammunition or any firearm, (c) it has broad prosecutorial discretion to decide whom to prosecute, so long as it does not employ discriminatory motives in its charging decisions, (d) it had no such motives here, and (e) Sanders fails to produce any evidence of discriminatory motive.  *Id.* at pp. 10-16.

The Prosecution argues that the evidence does not support Sanders's contention that he and Golden are similarly situated.   The Prosecution notes that during the same time period as Sanders's Count I offense (between January 7, 2019 and January 19, 2019), evidence indicates that Sanders was also involved in fleeing from the police and the moving of stolen goods. According to the Government, there is no evidence that Golden participated in either crime; instead, the evidence shows Golden cooperated with the police.   The Government further states that their respective criminal histories further differentiate Golden and Sanders:   Golden has three prior felony convictions, none of which is violent, while Marty Luke has 15, and Sanders has 10, and both Luke and Sanders have prior convictions for crimes of violence.   Doc. 139 at pp. 11-14.

On de novo review, the Court finds that the Amended Recommendation correctly sets forth the applicable law with respect to selective prosecution.   Doc. 125 at pp. 7-9.   The Court further finds that the record lacks any evidence that the United States employed any discriminatory motive in prosecuting Sanders but not (at this point) Golden, and that the United States did not exceed its prosecutorial discretion in this case.   The Court therefore finds that Judge Crites-Leoni correctly concluded that Sanders's Motion to Dismiss to the Indictment for

Selective Prosecution [Doc. 50] should be denied.   The Court overrules Sanders's objection and denies his Motion to Dismiss [Doc. 50].

## III.     Motion to dismiss count II for vindictive prosecution

Sanders objects to the Amended Recommendation's conclusion that his Motion to Dismiss Count II for Vindictive Prosecution [Doc. 49] should be denied.   Sanders's threadbare objection on this point presents no evidence or argument; instead it "relies on his previously filed motions."   Doc. 135 at p. 5.     Sanders does not specify which of his many motions he relies on, so the Court interprets Sanders's objection to rely on his "Motion to Dismiss Count II of the Indictment for Vindictive Prosecution" and, generously construing his objection,[2] his Motion to Dismiss the Indictment for Selective Prosecution.   Docs. 49 and 50.

Sanders argues that the Prosecution filed Count II, tampering with a witness by threat or intimidation, to punish him for asserting his right to trial after the Prosecution refused his offer to cooperate.   Docs. 37 at p. 2 and 49 at p. 3.   Sanders further alleges that the prosecutor "wants to see [him] do life in prison[.]" Doc. 49 at p. 3.

The United States argues that evidence shows it made the decision to supersede the original Indictment on February 14, 2019, two days after the grand jury returned the original Indictment, and six days before Sanders was transferred to federal custody and appeared for his first court appearance in this case.   Docs. 1, 7, 61 at p. 7, and 61-1.   The United States argues this timeline belies the allegations in Sanders's Motion because it made the decision to supersede the Indictment before Sanders had an opportunity to speak with the Government.   Doc. 135 at p.

---

2 Sanders's failure to specify which motion(s) he relies on does not properly preserve the objection; instead, Sanders must make specific objection.   *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir.1989) (objections must be "specific enough to trigger de novo review.").     Sanders's counsel helpfully added some specificity to some of the *pro se* objections but did not do so here.   *See, e.g.,* Doc. 135 at pp. 5-6 (adding information on *pro se* federal-jurisdiction motion).   The Court nonetheless will exercise its discretion to conduct de novo review of Sanders's objection on the vindictive-prosecution motion.   *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).

18.   The Government's response to Sanders' Motion freely admits it believes a life sentence is appropriate given the facts of the case and Sanders's extensive criminal history.   Doc. 61 at p. 10.

On de novo review, the Court finds that the Amended Recommendation correctly states the legal standards Sanders must meet to prevail on a claim of vindictive prosecution.   Doc. 125 at pp. 9-10.   Sanders must either: 1) present "'objective evidence of the prosecutor's vindictive or improper motive in increasing the number or severity of charges[,]'" *United States v. Williams,* 793 F.3d 957, 963 (8th Cir. 2015), or 2) "'in *rare* instances, rely upon a presumption of vindictiveness, if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists.'" *Id.* (emphasis in original) (internal quotation omitted). In determining whether the presumption of vindictiveness applies we examine "the prosecutor's actions in the context of the entire proceedings." *Id.*, quoting *Chappell* at 880 (quotation omitted).

The Court further finds that Sanders fails to present any evidence, much less objective evidence, of vindictive or improper motive in bringing the witness-tampering charge. Magistrate Judge Crites-Leoni correctly found that the United States' "decision to supersede the Indictment was based on new alleged criminal conduct by Sanders that occurred *before* Sanders appeared in this Court."  Doc. 125 at p. 10 (emphasis in original).   Examining the prosecutor's actions in the context of the entire proceedings, the Court finds that this is not one of the rare instances in which a presumption of vindictiveness applies.   Further, the Court does not view the United States' objective of seeking the maximum penalty as evidencing vindictive prosecution. Regardless of the Prosecution's intended sentencing recommendation, if Mr. Sanders is in fact guilty, the Court will "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. §3553(a)(2).

The Court addressed Sanders's Motion to Dismiss the Indictment for Selective Prosecution [Doc. 50] in Section II, and to the extent Sanders relies on that Motion for his vindictive-prosecution objection, the Court incorporates the above discussion and ruling.   To the extent Sanders relies on other unspecified motions, the Court finds no support for his vindictive-prosecution objection in the record.   On de novo review, the Court overrules Sanders's vindictive-prosecution objection [Doc. 135 at p. 5] and denies his Motion to Dismiss Count II for Vindictive Prosecution [Doc. 49].

IV.    ***Pro se* motion to dismiss count II for lack of federal jurisdiction and motion to sever count I from count II**

Because Sanders is a represented party, the Court has no obligation to entertain the *pro se* motions he files.   *Abdullah v. United States,* 240 F.3d 683, 686 (8th Cir. 2001).   Nevertheless, the United States has consented to Sanders filing *pro se* motions, and the Court accordingly will rule on the merits of Sanders's Motion to Dismiss Count II and Motion to Sever Count I from Count II [Doc. 120].

The Court notes that Judge Crites-Leoni's Amended Recommendation is only based on Sanders's *pro se* Motion [Doc. 120], which fails to set forth any factual or legal basis to support his claims, and on the United States' response [Doc. 121].   Counsel for Defendant concedes that Sanders's *pro se* Motion is "limited in argument" and attempts to clarify Sanders's arguments in the Objections to the Amended Recommendation [Doc. 135 at p. 5].   As a result, the Objections essentially raise new arguments, which Judge Crites-Leoni accordingly could not consider in preparing the Amended Recommendation.   As noted, the Court will consider the new arguments in its analysis below.

Sanders's *pro se* Motion raises various issues, including a motion to dismiss for lack of federal jurisdiction, motion to dismiss for violation of his First and Sixth Amendment rights, and

motion to sever the trial of Count I from the trial of Count II.   *See generally* Docs. 120 and 135. The Court addresses these three aspects in turn.

### A.      Motion to dismiss count II

Sanders objects to the Amended Recommendation's conclusion that Sanders's *pro se* Motion to Dismiss Count II for lack of federal jurisdiction [Doc. 120] should be denied.   In Sanders's Objections, counsel argues that this Court lacks the jurisdiction to convict Sanders on Count II, witness-tampering, because no evidence shows that Sanders had knowledge of a federal proceeding at the time of the witness-tampering offense.   Doc. 135 at pp. 5-6.

Count II charges Sanders with violating 18 U.S.C. § 1512(b)(2)(A), which in relevant part provides:

> (b)   Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to…
>
> > (2) cause or induce any person to—
> >
> > > (A)   withhold testimony, or withhold a record, document, or other object, from   an **official proceeding** . . .
> >
> > shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b)(2)(A) (emphasis added).   As is relevant here, "the term 'official proceeding' means…a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury[.]"   18 U.S.C. §1515(a)(1)(A).

Sanders relies on *United States v. Petruk*, 781 F.3d 438 (8th Cir. 2015).   In *Petruk,* the defendant was convicted by a jury on two counts of corruptly attempting to obstruct an official proceeding in violation of 18 U.S.C. § 1512(c)(2), related to a carjacking charge.   One obstruction charge was for the defendant's attempts while in state custody to secure false alibi

witnesses before federal carjacking charges were filed, and the second was for his attempt to obtain a false confession after the federal prosecution for carjacking was initiated. The Eighth Circuit affirmed the defendant's conviction for the obstruction offense that occurred *after* initiation of the federal prosecution but vacated defendant's conviction for the obstruction offense that occurred *before* initiation of the federal prosecution.   *Id.* at 441.

The Eighth Circuit held that a successful prosecution under 18 U.S.C. § 1512(c)(2) requires proof that the defendant contemplated a particular, foreseeable, "official proceeding," as defined in 18 U.S.C. § 1515(a)(1)(A) to include a proceeding before a federal court, but not a state court. *Id.* at 445. The court then found that the defendant's efforts to secure false statements pertained to an upcoming state-court proceeding and, therefore, not an "official proceeding" as defined by the statute. Further, the Court found no evidence that the defendant was even under federal investigation at the time the obstruction offense occurred, much less that the defendant was aware of any federal investigation when the offense occurred. *Id.* at 446.

Turning to this case, Sanders argues that to have federal jurisdiction, and presumably to be charged under 18 U.S.C. § 1512(b)(2)(A), the evidence must show that he contemplated a particular, foreseeable, *federal* proceeding at the time of his alleged witness tampering.   Sanders claims that no evidence proves he had knowledge of a *federal* proceeding at the time of the Count II offense. To support his argument, Sanders points out that the Count II offense allegedly occurred on February 9, 2019, three days before he was federally indicted on Count I in the original Indictment.   Sanders implies that because a federal indictment was not yet returned at the time of the offense, he had no knowledge of the federal prosecution.   Doc. 135 at pp. 5-6.

The United States argues that a February 9, 2019 video of Sanders shows him making the threats that resulted in Count II of the Superseding Indictment.   In the video, Sanders talks to a

14

person identified by the Prosecution as "Jason Teeters"[3] about various matters related to his criminal charges and Golden's culpability in those crimes.   Sanders also makes statements about the possibility of federal charges:

| Sanders: | Now, **if the feds step in**, then I'm going to have to go through that . . . now . . . go through that. But I wasn't in possession of no gun. They got . . . They got to catch me with a gun. You hear me. They got to have it on me. They got to find it on me. They haven't. But, Becka . . . |
|---|---|
| Teeters: | Trying to do what they want to do, don't they. |
| Sanders: | Well, they will. But see. Marty, hey, Marty, is stepping up and going to say it was his truck. He took them on a speed chase. He . . . felony restraint. I was . . . like it was felony restraint. I couldn't do anything. I couldn't get out or nothing . . . of the truck. |

Docs. 139 at pp. 22-23 and 139-2 (video) at 10:22 (emphasis added).

On de novo review, the Court finds that Sanders contemplated the possibility of federal prosecution at the time of the Count II offense, and finds the Court has jurisdiction over Count II. The Court overrules Sanders's lack-of-jurisdiction objections [Doc. 135 at pp. 5-6] and denies Sanders's *pro se* Motion to Dismiss Count II [Doc. 120].   The Court recognizes that Sanders has stipulated the video only for purposes of responding to his Objections and not for any other purpose.   Doc. 148.

## B.     Violation of First and Sixth Amendment rights

Sanders objects to the Amended Recommendation's conclusion that his request for dismissal of Count II based on violation of his First and Sixth Amendment Rights as asserted in the *pro se* Motion [Doc. 120] should be denied.   In Sanders's Objections, his counsel attempts to clarify some of the arguments in the *pro se* Motion by essentially raising a new argument.   The

---

3 The Court notes that the person's name may be "Teeter" (see Doc. 148) but need not resolve that issue for present purposes and refers to him as "Teeters."

Objections further indicate that Sanders stands by the arguments included in his *pro se* Motion, without any further explanation or citation.   Doc. 135 at pp. 6-7.

As clarified by counsel, Sanders's Fifth and Sixth Amendment objections relate to the video-recorded February 9, 2019 jailhouse conversation that resulted in witness-tampering charges against Sanders.   In the video, Sanders directs Teeters to tell Golden that the "Black River is really cold right now."[4] Sanders's Objections leave unclear whether he maintains his Motion under the First Amendment.   Both the United States and Judge Crites-Leoni interpreted his *pro se* motion as arguing that his free speech rights enable him to make threats against others. Doc. 125 at p. 12. Sanders argues that prosecuting him violates the Confrontation Clause because Teeters has since passed away, and he will be unable to question Teeters on the meaning of the "Black River" statement.   Doc. 135 at p. 7.   Sanders's argument implies that he believes the video recording is inadmissible testimony that should not be used at trial.   *Id.* at 8.

### 1.      First Amendment

The Court finds, on de novo review, that the Amended Recommendation correctly states and applies the law with respect to the First Amendment. If Sanders did ask Teeters to tell Golden that "Black River is really cold right now" to dissuade Golden from acting as a witness against Sanders, that statement would be a threat that the First Amendment does not protect. Doc. 125 at p. 13, citing cases.   Accordingly, the Court denies Sanders' First Amendment claim in his Motion [Doc. 120].

---

4 In his Objections, Sanders refers to the statement as "very cold"   Doc. 135 at p. 6.   On the Court's de novo review of the video, the Court finds that Sanders states both "very cold" and "really cold."   Doc. 139-2 at 18:40.

2.      **Sixth Amendment**

a.      **Grand jury**

Sanders's Objections also leave unclear whether Sanders complains about not being represented during the Grand Jury proceedings when witnesses testified against him, which is how both the United States and Judge Crites-Leoni interpreted his *pro se* motion.   Doc. 125 at p. 13.   Assuming Sanders maintains this objection, the Court finds on de novo review that the Amended Recommendation correctly sets forth the legal standard, correctly concludes that Sanders does not enjoy the protections of the Sixth Amendment until proceedings are instituted against him, and correctly denies Sanders' claim of violation of his Sixth Amendment rights in his Motion [Doc. 120] on this basis.   *Id.*, citing cases.

b.      **Trial**

The United States argues that the death of Teeters does not bar the admission of the video recording at trial and that the video recording is admissible under the *McMillan* Standard.   Doc. 139 at p. 24.   In *United States v. McMillan,* 508 F.2d 101 (8th Cir. 1974), the Court held that recordings are admissible so long as they are properly authenticated.   The Prosecution argues that it will be able to lay a proper *McMillan* foundation to admit the video recording at trial.   *Id.* at 25.

The United States next argues that the admission of the video recording will not violate Sanders's Confrontation Clause rights or any rule of evidence because it will not offer the Black River statement for the truth of the matter asserted.   Doc. 139 at p. 25.   The Prosecution argues that Teeters's statements will merely serve to give context and meaning to Sanders's statements. *Id.* at p. 25.

The Sixth Amendment's Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him[.]"   U.S. Const. amend. VI.   In *Crawford v. Washington,* 541 U.S. 36, 68-69(2004), the Court held that the Confrontation Clause bars the admission of out-of-court testimonial statements unless the witness is unavailable and the defendant had an earlier opportunity to cross examine the witness. "*Crawford* made clear that the Confrontation Clause applies only to testimonial hearsay statements[,]" i.e. those statements admitted for the truth of the matter asserted.   *United States v. Wright*, 739 F.3d 1160, 1170 (8th Cir. 2014), citing *United States v. Holmes*, 620 F.3d 836, 841 (8th Cir. 2010).

Here, the United States does not seek to admit Teeters's statements for the truth of the matter asserted but only to provide context for Sanders's statements, which are admissions of a party opponent.   Doc. 139 at p. 27.   In short, the United States argues that the video will be admissible for proper purposes, and that those purposes do not violate Sanders's Confrontation Clause rights.   Doc.139 at pp. 26-27

The Court reserves for trial its final determination of admissibility of the video.   But, the Court finds on de novo review that continuing to prosecute this case (specifically Count II) does not violate Sanders's Confrontation Clause rights.   The Court overrules Sanders's First and Sixth Amendment objections [Doc. 135 at pp. 6-7] and denies his request for dismissal of Count II in his Motion [Doc. 120] on this basis.

### C.     Motion to sever count I from count II

Sanders objects to the Amended Recommendation's conclusion that his request in his *pro se* Motion to sever Count I from Count II [Doc. 120] should be denied.   The objection states that Sanders stands by the arguments included in his *pro se* Motion with one addition: Golden is not a

witness against him for the Count I felon-in-possession charge because she has allegedly stated that she never saw him with a gun.   Doc.135 at p. 7.   While Sanders offers nothing to support that assertion, the Court treats it as a proffer of what Sanders expects the evidence to show.

As set forth in the Amended Recommendation, an indictment may charge a defendant with two or more offenses if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."   Fed. R. Crim. P. 8(a).   The Eighth Circuit has upheld the joinder of witness-tampering and underlying charges on the rationale that the charges are "'factually interrelated'". *United States v. Colhoff*, 833 F.3d 980, 983 (8th Cir. 2016) quoting *United States v. Rock*, 282 F.3d 548, 552 (8th Cir. 2002).   Doc. 125 at p. 14.

On de novo review, the Court finds that Count I and Court II are factually interrelated. Even accepting for the purposes of this analysis Sanders's assertions about Golden, Sanders's Motion fails for two reasons.   First, Sanders has a motive to threaten Golden because even if she "never saw Sanders with a gun," she nonetheless could implicate Sanders in the crime charged given her presence in the hotel room where a firearm, ammunition, and stolen goods were found. Sanders himself also acknowledges in the video that Golden may be trying to avoid prosecution herself, which alone could cause Sanders to threaten her.   Doc. 139-2 (video) at 14:50.   Second, the United States will need to submit evidence to support the charge in Count II that Sanders and another man were "discussing the fact that R.G. was a witness against the defendant with regard to the conduct charged against the defendant in Count I".   Doc. 92 at p. 2.   The specific reference in Count II to Sanders discussing the charge in Count I demonstrates the evidentiary overlap between the counts.   *Colhoff*, 833 F.3d at 983-84.

The Court overrules Sanders's objections to the Amended Recommendation's conclusion regarding his Motion to Sever Count I from Count II [Doc. 120].   And, the Court denies Sanders's Motion to Dismiss Count II and Motion to Sever Count I from Count II [Doc. 120]. Sanders's request for an evidentiary hearing is also denied.

**V.      Sanders's motion to disclose grand jury transcripts**

Sanders objects to the Amended Recommendation's conclusion that his Motion to Disclose Grand Jury Transcript [Doc. 106] should be denied.   Sanders's Objections states that he stands by the arguments included in his previously-filed motions, again without any further explanation or citation.   Doc. 135 at p. 7.

On de novo review, the Court finds that Sanders's claim that "it is necessary to see the Grand Jury transcripts to discover whether [the AUSA] made inflammatory comments against Defendant to the Grand Jury that would lead to a dismissal of this case[,]" relies upon the same basis to dismiss Count II that the undersigned already rejected on de novo review (see section III, above) and offers no new or other particularized reason to review the transcript.   Docs. 106 at p. 2 and 125 at pp. 16-20.   Further, the Prosecution states that it intends to provide copies of the grand jury testimony of any of its trial witnesses within a few days before the trial, in compliance with Fed. R. Crim. P. 26.2.   Doc. 139 at p. 34.   The Court finds that the Amended Recommendation correctly states the law applicable to this Motion.   Doc. 125 at pp. 17-19. The Court determines that Sanders falls short of stating any basis for disclosure of the grand jury transcripts and therefore overrules Sanders's objections [Doc. 135 at p. 7] and denies his Motion to Disclose Grand Jury Transcript [Doc. 106].

## VI.   Sanders's motion to sever the defendants for trial

Both Sanders and the United States agree to sever Sanders's trial from the trial of Defendant Luke.   Docs. 51 and 63.   The Court grants Sanders's Motion to Sever the defendants for trial [Doc. 51].

Accordingly,

**IT IS HEREBY ORDERED** that the Amended Report and Recommendation [Doc. 125] of United States Magistrate Judge Abbie Crites-Leoni is **SUSTAINED, ADOPTED, AND INCORPORATED** herein, except as noted in Section I above.

**IT IS FURTHER ORDERED** that Sanders's Motion to Dismiss Count II for Vindictive Prosecution [Doc. 49], Motion to Dismiss the Indictment for Selective Prosecution [Doc. 50], *pro se* Motion for Disclosure of Grand Jury Transcripts [Doc. 106], *pro se* Motion to Dismiss Count II and Motion to Sever Count I from Count II [Doc. 120] are **DENIED**.

**IT IS FINALLY ORDERED** that Sanders's Motion to Sever the Defendants for Trial [Doc. 51] is **GRANTED**.

STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of April, 2020.